FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
ROBIN RIHA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN RIHA<br><br>Plaintiff,<br><br>vs.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and HCA, INC. GROUP LONG TERM DISABILITY PLAN,<br><br>Defendants. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that Defendant, HCA, INC. LONG TERM DISABILITY PLAN ("Plan") is an employee welfare benefit plan established and maintained by HCA, Inc. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, ROBIN RIHA ("Plaintiff" or "Ms. Riha"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ("PRUDENTIAL"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, authorized to transact and transacting the business of insurance in this state, and the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant PRUDENTIAL, which fully insured the Plan and which is ultimately liable if Plaintiff is found disabled, may be found in this district.

6. At all relevant times Plaintiff was a resident of the United States, an employee of HCA, Inc., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number G-44028-TN-1 (the "Policy") that had been issued by Defendant PRUDENTIAL to HCA, Inc. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. The subject Policy promised to pay Plaintiff monthly Long Term Disability benefits for a specified period of time should she become disabled. Therefore, PRUDENTIAL both funds benefits and decides whether claimants will receive benefits under the Plan and, as such, suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, Defendant PRUDENTIAL promised to pay long term disability benefits to Plaintiff as follows:

- Disability or Disabled means:
  - You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
  - You are under the regular care of a doctor; and
  - You have a 20% or more loss in your monthly earnings due to that sickness or injury.
- After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
  - You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
  - You are under the regular care of a doctor.
- Elimination Period:  147 days
- Monthly Benefit:  60% of your monthly earnings
- Maximum Monthly Benefit:  $10,000
- Material and substantial duties means duties that:
  - Are normally required for the performance of your regular occupation; and
  - Cannot be reasonably omitted or modified.

10. Prior to her disability under the Plan, Plaintiff, who had been employed by HCA, Inc., was working as a Registered Nurse.

11. On or about February 1, 2015, Plaintiff became disabled under the terms of the Plan due to exertional limitations imposed by her status post right heel resection with Achilles tendon resection, osteoarthritis of the right knee, and lumbar stenosis. PRUDENTIAL approved her claim.

12. On or about October 16, 2018, Plaintiff was examined by Amanda Tedstrom, M.D., a specialist in Internal Medicine, who had treated her since August 2016.  Ms. Riha was noted to have symptoms of pain, swelling, and imbalance relating

to her right knee. Examination of this joint by Dr. Tedstrom was noted to reveal positive clinical findings of decreased range of motion, effusion, and medial joint line tenderness.

13. Later that same day, Plaintiff underwent an X-ray examination of her right knee at the Erlanger Health System. The examination revealed diffuse enthesopathy of the right knee with moderate effusion.

14. On or about November 21, 2018, Plaintiff was examined by Jeremy Bruce, M.D., a specialist in Orthopedic Surgery. The doctor reported that Ms. Riha's right knee pain was aggravated by walking, climbing stairs, squatting, or kneeling. Examination of this joint by Dr. Bruce was noted to reveal moderate effusion, pain at end range of motion, and mild patellar grind.

15. On or about April 30, 2019, Plaintiff underwent an MRI examination of her lumbar spine at EPHS Baroness Erlanger Hospital. The examination revealed moderate right and left facet arthropathy, and mild right greater than left neuroforaminal narrowing at L5-S1.

16. On or about August 19, 2019, Dr. Tedstrom completed a Capacity Questionnaire in regards to Plaintiff's functional capacity. The doctor stated that she believed that Ms. Riha would not be able to return to full-time work due to her limitations. These limitations were noted to include occasional standing, walking, climbing stairs, and stooping; as well as no balancing, working at heights, kneeling, and crawling. Dr. Tedstrom also indicated that Plaintiff experiences swelling in her feet when she stands for long times and that she is a fall risk.

17. On or about August 29, 2019, Plaintiff was examined by Nick Nicholson, D.C. Ms. Riha's primary complaints at this encounter were noted to be severe pain in her low back, and moderate pain and muscle spasm in her neck. Dr. Nicholson's examination of Plaintiff revealed decreased range of motion in her neck and low back, moderate muscle spasm in her thoracic and lumbar spine, and mild-to-moderate muscle spasm of her cervical spine.

18. On or about November 11, 2019, Plaintiff began treatment with Jessica

McLendon, P.A. Ms. Riha's primary complaint at this encounter was right ankle pain, and her symptoms were noted to include a loss of sensation in her feet, and difficulty walking and sleeping. PA McLendon's examination revealed an antalgic gait, and tenderness over her Achilles insertions, bilaterally. X-ray examination of Plaintiff's ankles at this encounter also revealed moderate degenerative changes, bilateral plantar heel spurs, and a large posterior calcaneal spur on the right.

19. On or about July 15, 2020, Plaintiff was examined by Miriam Edwards, P.A., with a primary complaint of bilateral hip pain. Ms. Riha's pain was described as severe, sharp, aching, and constant. PA Edwards' examination of Plaintiff revealed positive clinical findings of tenderness in the pes anserinus and patellofemoral crepitus in her right knee, tenderness in the lateral joint line of the left knee, positive impingement of the bilateral hips, and right-sided tenderness of the sacroiliac joint.

20. On or about August 31, 2020, Plaintiff underwent an MRI examination of her lumbar spine at the Erlanger Health System. The examination revealed evidence of lumbar spondylosis with moderate canal stenosis most pronounced at L4-L5.

21. On or about November 16, 2020, PA McLendon indicated that Plaintiff had undergone a left reconstruction and debridement of the left Achilles tendon with partial ostectomy of the calcaneus and stray gastroc soleus lengthening and gastrocnemius recession sequesterctom of the talus and secondary repair of the Achilles tendon without graft on November 2, 2020. Ms. Riha was noted to be experiencing pain and immobilized in a cast.

22. On or about November 19, 2020, Dr. Tedstrom reported that Plaintiff had memory problems for the last six-to-twelve months and needed a referral to a neurologist. Ms. Riha was experiencing increased back pain after having to use a scooter for ambulation post-surgery.

23. On or about November 23, 2020, PA McLendon indicated that Plaintiff should remain off of work until she was twelve weeks post-op on January 25, 2021.

24. On or about February 18, 2021, Dr. Tedstrom provided an updated

assessment of Plaintiff's functional capacity in a Medical Questionnaire. Plaintiff's primary symptoms were noted to include joint pain, achiness in hands, and numbness in her legs and fingers. Ms. Rija was noted to be limited to sitting, standing, and walking for a total of less than two hours in an eight-hour workday, and that she would need to take unscheduled breaks during any potential job every 10-15 minutes for the same amount of time. Dr. Tedstrom also stated that she still believed Plaintiff to be incapable of performing full-time sedentary work.

25. PRUDENTIAL initially approved Plaintiff's benefits based on her onset date of February 1, 2015, and paid benefits under the Plan through October 8, 2019. In correspondence dated October 8, 2019, PRUDENTIAL unreasonably and unlawfully denied Ms. Riha's claim, stating that she was now able to perform other work in the national and regional economies. PRUDENTIAL subsequently upheld its unreasonable and unlawful denial in correspondence dated October 19, 2020, and September 17, 2021.

26. According to PRUDENTIAL's denial letters:
- **October 8, 2019:** "After careful review, we have determined that no benefits are payable beyond October 9, 2019. […] If you disagree with this decision you have the right to appeal." Plaintiff timely appealed.
- **October 19, 2020:** "We have determined that our decision was appropriate and have upheld our decision to terminate LTD benefits. […] You may again appeal this decision to Prudential's Appeals Review Unit for a final decision." Plaintiff again timely appealed.
- **September 17, 2021:** "We have determined that our decision was appropriate and have upheld our decision. […] This decision is final and cannot be appealed further to Prudential."

27. To date, even though Plaintiff has been disabled, PRUDENTIAL has not paid Ms. Riha any disability benefits under the Plan since on or about October 9, 2019. The unlawful nature of PRUDENTIAL's denial decision is evidenced by, but not limited

to the following:

- PRUDENTIAL engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed her file; failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim; and

- PRUDENTIAL ignored the obvious, combed the record, and took selective evidence out of context as a pretext to deny Plaintiff's claim; and

- PRUDENTIAL ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, PRUDENTIAL'S highly conflicted physicians' opinions do not serve as substantial evidence as they are not supported by evidence in the claim file nor are they consistent with the overall evidence in the claim file.

28. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan, and contrary to law. Further, Defendant PRUDENTIAL's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

29. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims

processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a full and fair review of claim denials, § 1133(2); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

30. As a direct and proximate result of PRUDENTIAL's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits from October 9, 2019, to the present.

31. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by Defendant pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

32. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she meets the Plan definition of disability and consequently she is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits including, but not limited to, reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. An award of benefits in the amount not paid to Plaintiff since October 9, 2019, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to disability payments/benefits so long as she remained disabled as defined in the Plan;

3. For reasonable attorney fees and costs incurred in this action; and,

1  4.   For such other and further relief as the Court deems just and proper.

Dated: October 25, 2021

**DarrasLaw**

_____
FRANK N. DARRAS
SUSAN B. GRABARSKY
Attorneys for Plaintiff
ROBIN RIHA